FILED
2013 Nov-25  PM 01:24
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN  DIVISION**

| | |
|---|---|
| **CLAUDETTE RICH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.: 5:12-cv-00654-LSC** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Plaintiff Claudette Rich ("Plaintiff") brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration[1] ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See also* 42 U.S.C. §§ 405(g), 1383(c).  After careful review, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff applied for DIB on November 9, 2008. [R. 106-109].  Plaintiff also applied for SSI on December 15, 2008. [R. 103-106].  In both applications, Plaintiff alleged disability beginning on October 26, 2007 [R. 103; 106] due to allergies, asthma, and arthritis. [R. 126]. The Social Security Administration denied Plaintiff's claims on March 31, 2009.  [R. 80-84].  Plaintiff requested [R. 86-

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit.  *See* Fed. R. Civ. P. 25(d)  ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

87] and received a hearing before an administrative law judge ("ALJ") on August 4, 2010. [R. 50-72].  The ALJ issued a decision on November 5, 2010 denying Plaintiff's applications. [R. 24-40]. On December 27, 2011, the Appeals Council denied Plaintiff's request for review [R. 1-6], making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

A.      **Hearing Testimony**

At the time of the hearing, Plaintiff was 50 years old and had an associates degree from a technical college. [R. 54-55].  Plaintiff last worked as a pharmacy technician on October 26, 2007. [R. 56; 58].  She alleged she was unable to return from five months of sick leave because of arthritis and a Baker's cyst. [R. 56].  Plaintiff had not looked for another job. [R. 56].  She claimed she was currently unable to work because of her pain in her knee and right foot, arthritis in her back, and allergies. [R. 56].  Plaintiff testified that if she comes into contact with anyone who has been smoking or is wearing a certain perfume, she has trouble breathing. [R. 57].  Plaintiff stated that she also had an issue with her middle finger on her left hand. [R. 71].  She had a tendon cut and replaced, which prevented Plaintiff from fully bending that finger. [R. 72]. Plaintiff also testified that her diabetes causes fatigue. [R. 58].  She further stated that if her blood sugar drops, she becomes "jittery" and cannot "think straight." [R. 58].  Plaintiff testified that she was able to buy (or receive for free) all of her medications and that they caused no side effects. [R. 60].  Plaintiff was taking Cingular and Advair for her asthma.  She also had an inhaler. [R. 61].

Plaintiff told the ALJ that she could sit upright for about 15 or 20 minutes before her back would start to hurt. [R. 57].  She stated that she could stand for about 10 or 15 minutes before her foot and left knee would start to hurt. [R. 57].  Plaintiff reported that she could "walk around the

block," tie her shoes, and open doors with a doorknob. [R. 57].   Plaintiff lived in a home with her adult daughter.  She testified that they share household chores and cooking responsibilities. [R. 54]. Plaintiff stated that she drove to church and to the store to shop for groceries. [R. 55].  Plaintiff testified that she did no outside chores. [R. 55].

Plaintiff stated that she believed she would have missed between six and ten days of work over the previous month due to her pain. [R. 60].   When asked by the ALJ if she could perform a job where she could sit and stand when she wanted and her only responsibility would be to look at a video screen, Plaintiff answered that she could not perform that job because she could not sit upright. [R. 61].  Plaintiff then stated "well, you said I could stand or sit as much as I wanted to. I don't know. . . .But I don't think I could do it.  Well, boredom." [R. 61].

An ALJ also testified at the hearing.  She stated that Plaintiff's past relevant work included pharmacy technician, semiconductor assembler, cake decorator, and cashier. [R. 62; 64-65].  The VE testified there would be transferrable skills from these jobs to other light jobs such as sales clerk and electronic component processor. [R. 65].  The ALJ posed a hypothetical to the VE and asked whether someone of someone of Plaintiff's age, education, and work experience who could occasionally lift up to 20 pounds, could frequently lift ten pounds, could sit or stand for six hours in an 8-hour work day, could stand and walk for six hours in an 8-hour work day, could occasionally climb ramps and stairs, and who should not be exposed to fumes, odors, dust, gases, poor ventilation, or extreme heat and cold, would be able to perform Plaintiff's past relevant work. [R. 66].  The ALJ responded that such an individual would not but she testified that others jobs existed in the national economy that this individual could perform, including inspector, assembler, and some cashier jobs. [R. 66].   The ALJ posed a second hypothetical based upon the first but a sit/stand job permitting the individual

3

to sit for six hours but no more than 30 minutes at a time and stand/walk for four hours but no longer than ten minutes at a time without the ability to sit. [R. 67]. Based upon this second hypothetical, the VE testified that her opinion of the jobs previously listed would not change. [R. 67].

Plaintiff's attorney posed a hypothetical to the VE and asked the VE to review a functional capacity evaluation ("FCE") and to assume that Plaintiff's restrictions limited her to sedentary or less than sedentary work. The VE responded that no jobs would be available that Plaintiff could perform. The ALJ then pointed out that the FCE indicated that Plaintiff could lift 30 pounds in various positions. Plaintiff's attorney responded that these were "rarely" or on a one-time basis. [R. 68-71].

**B.   Medical Records**

**1.   Treatment History**

Plaintiff sought primary care at Huntsville Family Care from April 2004 through July 2007. [R. 337-416]. Plaintiff saw Michael Johnson, M.D. on April 7, 2004 for a complete physical and follow up of her current medical problems. [R. 378]. Dr. Johnson reviewed Plaintiff's history of high blood pressure, allergies, and asthma. [R. 378]. Plaintiff reported her high blood pressure symptoms improved with medication. Plaintiff stated that her allergy symptoms started two weeks before her visit. [R. 378]. Plaintiff indicated that her condition improved with antihistamines and exposure to allergens. [R. 378]. Plaintiff reported her asthma symptoms as moderate in intensity but that her condition improved with antihistamines and bronchodilators. [R. 378]. Upon examination, Plaintiff revealed no clubbing or cyanosis in her extremities. [R. 379]. Her musculoskeletal exam was normal. [R. 379]. Dr. Johnson diagnosed Plaintiff with unspecified essential hypertension, asthma, and chronic rhinitis. [R. 379].

When Plaintiff saw Dr. Johnson on August 18, 2004, she complained of intermittent back

4

pain. [R. 374]. Plaintiff stated that the pain occurred with bending and heavy lifting. Upon examination, Plaintiff's lumbar region demonstrated pain with movement and palpation. [R. 374]. Dr. Johnson diagnosed Plaintiff with a backache and recommended that she avoid any manipulation of the thoracic spine or the lumbar spine. [R. 375]. Dr. Johnson also recommended that Plaintiff avoid twisting and lifting as much as possible. [R. 375]. He also suggested Plaintiff try over-the-counter medications such as Advil and Motrin. [R. 375].

Dr. Johnson treated Plaintiff again on January 10, 2005 for insomnia, hyperlipidemia, acne or a skin rash, and high blood pressure. [R. 371-372]. Dr. Johnson prescribed various medications and recommended that Plaintiff follow-up in six weeks. [R. 372]. When Plaintiff saw Dr. Johnson again in April 2005, she reported myopathy and muscle weakness. [R. 367]. Treatment notes indicate that Plaintiff experienced muscle weakness in her arms and legs. Dr. Johnson believed this was likely related to her blood pressure medication. [R. 367]. He diagnosed Plaintiff with seasonal allergic rhinitis and muscle spasm. [R. 368]. Dr. Johnson also recommended that Plaintiff avoid contact with dust and that she vacuum her house on a regular basis. [R. 368].

On May 9, 2005 Plaintiff reported she was experiencing right leg and arm pain. [R. 365]. Treatment notes indicate the pain was caused by arthritis and joint pain. [R. 365]. Plaintiff reported the pain as intermittent and she stated that her symptoms improved with activities of daily life, ambulation, anti-inflammatory drugs, exercise, and pain medications. [R. 365]. Dr. Johnson prescribed two medications and also instructed Plaintiff to increase her water intake. [R. 366]. He suggested hot soaks and warm paraffin wax as at-home remedies. He also told Plaintiff that exercises, such as range of motion, stretching, strengthening, aerobic, isometric, and recreational activities might help strengthen her muscles and stimulate cartilage growth. [R. 366].

5

During a visit on June 21, 2005, Dr. Johnson diagnosed Plaintiff with rheumatoid arthritis, radiculopathy, hyperlipidemia, and intrinsic asthma. [R. 364]. Upon examination, Plaintiff's cervical spine demonstrated pain with movement and palpation. [R. 364]. Dr. Johnson noted that Plaintiff's asthma as well controlled. [R. 363]. When Plaintiff returned on August 3, 2005, she was experiencing shortness of breath and appeared in moderate distress. [R. 361-362]. Dr. Johnson diagnosed Plaintiff with shortness of breath and acute sinusitis and prescribed various medication. He instructed Plaintiff to avoid those who smoke and industrial fumes and dust. [R. 362].

On October 11, 2005, Plaintiff saw Dr. Johnson again and complained of continuing back pain. [R. 357]. Plaintiff reported that her symptoms improved with pain medication and rest but not with activities of daily living, ambulation, bending, lying down, or straight leg raise. Dr. Johnson noted that questionable new changes had occurred since Plaintiff's last visit. [R. 357]. Upon examination, Plaintiff demonstrated straight leg raise and her lumbar region revealed pain with movement and palpation. [R. 358]. Dr. Johnson diagnosed Plaintiff with low back pain and ordered an x-ray.

In April 2007, Dr. Johnson diagnosed Plaintiff with degenerative disc disease and rheumatoid arthritis. [R. 346]. Plaintiff's low back revealed pain with movement and palpation. [R. 346]. Dr. Johnson did not prescribe any medications during this visit but suggested Plaintiff try over-the-counter Advil or Motrin. [R. 346]. He also recommended that Plaintiff avoid manipulation of her thoracic and lumbar spine. [R. 346]. He further instructed Plaintiff to avoid twisting and lifting over as many pounds as possible. [R. 346]. In May and July 2007, Dr. Johnson treated Plaintiff's high blood pressure and an asthma flare-up. [R. 338-344]. Treatment notes include no new information regarding Plaintiff's conditions.

6

Plaintiff received treatment from various providers, including Nicole Scruggs, M.D. at Central North Alabama Health Services from July 1, 2005 through February 9, 2010. [R. 200-223; 230-236]. These treatment notes document Plaintiff's complaints associated with her asthma and allergies. During most visits, Plaintiff received prescriptions for various asthma medications. [R. 201; 204; 205; 210; 211; 212; 232; 233]. During one visit in August 2009 Plaintiff complained of right shoulder pain. [R. 235]. Plaintiff reported her pain level was a four. [R. 235]. Treatment notes do not reveal any findings associated with Plaintiff's reported shoulder pain. [R. 235]. Although substantially void of any information related to Plaintiff's joints or back pain, treatment notes from visits on July 13, 2006 and February 5, 2010 indicate that Plaintiff demonstrated no leg or joint swelling. [R. 210; 232].

The record also contains a May 12, 2010 progress note from Central North Alabama Health Services signed by Dr. Scruggs. This progress note indicates that Plaintiff had applied for disability and needed forms completed for her lawyer. [R. 277]. These notes state that Plaintiff suffers from diabetes, asthma, and high blood pressure. [R. 277]. Dr. Scruggs also commented that Plaintiff has complained of back, knee, and foot pain. [R. 277]. She indicated that Plaintiff's reported pain level was a four. [R. 278].

In late 2007 and early 2008, Plaintiff saw David Griffin, M.D. at The Orthopaedic Center. [R. 197-199]. During a visit on November 1, 2007, Plaintiff complained of left knee pain and swelling. [R. 198]. Dr. Griffin's examination of Plaintiff's left knee revealed "minimal swelling." [R. 198]. Dr. Griffin did not detect an overt knee effusion. Dr. Griffin diagnosed Plaintiff with probable degenerative medial meniscal tear left knee and mild degenerative arthritis left knee with patellofemoral syndrome. [R. 198-199]. Dr. Griffin told Plaintiff that he believed her symptoms

could be "treated conservatively with anti-inflammatory medication and physical therapy." [R. 199].

He also suggested an MRI to rule out a significant meniscal lesion that would require surgical

treatment.  [R. 191].   During a follow-up visit on February 13, 2008, Plaintiff reported that her

symptoms had improved. [R. 197].  She continued to have some "mild clicking and discomfort in

the knee on an intermittent basis."  She also reported that "her back [was] much improved." [R. 197].

Plaintiff had not gone to physical therapy but had taken Mobic on a regular basis. [R. 197]. Upon

examination, Plaintiff demonstrated a normal gait pattern. [R. 197].  Plaintiff showed no tenderness

in the lumbar spine or the knee to range of motion or palpation. [R. 197].  Dr. Griffin noted that

Plaintiff's lumbar strain was clinically resolved and her mild degenerative arthritis was clinically

improved. [R. 197].  Dr. Griffin released her to work "on Monday" and provided a note excusing her

from February 6 through Monday. [R. 197].  Dr. Griffin indicated he would see Plaintiff on an as

needed basis if her symptoms returned or progressed.[2] [R. 197].

On July 11, 2010, Plaintiff sought treatment from Huntsville Hospital for left knee pain. [R.

281].  Triage notes indicate that Plaintiff heard a pop in her knee while she was dancing the night

before. [R. 285].  Plaintiff demonstrated tenderness on the left knee. [R. 286].  X-rays revealed a

joint effusion and degenerative changes. [R. 290].  Plaintiff was diagnosed with a knee sprain and

prescribed Lortab. [R. 282].

## 2.    Consultative Examinations

Dr. Scruggs referred Plaintiff to physical therapist Heidi Teague for a functional capacity

evaluation on June 1, 2010.  [R. 266-274].  Upon examination, Teague observed decreased heel

strike and tenderness on palpation to the lateral side of Plaintiff's right knee. [R. 268].  Plaintiff's

---

[2]  The record contains no other records from Dr. Griffin.

strength in her shoulders, elbows, wrists, hips, knees, and ankles was 4-/5 or 4/5. [R. 268].  Strength

in her trunk was 2/5. [R. 268].  Teague noted that Plaintiff had swelling in both feet and ankles. [R.

268].  Plaintiff's deep tendon reflexes were symmetrical for upper and lower extremities. [R. 268].

Plaintiff's maximum demonstrated squat was a half squat with a wide base of support. [R. 268].

During the examination, Plaintiff complained of increased pain with static standing and frequently

her weight shifted. [R. 270].  Teague indicated that Plaintiff demonstrated antalgic gait; however,

she was able to complete a quarter of a mile walk test. [R. 270].  Teague observed that Plaintiff was

able to lift 30 pounds at waist level with horizontal lift and that she was able to carry 30 pounds with

front carry and with right hand and left hand carry. [R. 271].  Plaintiff demonstrated prolonged sitting

of 30 minutes. [R. 271].  She also demonstrated the ability to complete prolonged standing for 30

minutes but experienced increased pain and performed weight shifting. [R. 271].  Plaintiff also

demonstrated adequate balance. [R. 271].  Prior to the evaluation, Plaintiff stated her pain level was

a three. Upon completion of testing, Plaintiff reported that her pain level was an eight. [R. 267].

Plaintiff complained of "burning" pain in her lumbar region, "stabbing" pain in her left knee, and

"numbness" on her middle finger of her right hand.  She also complained of "pins and needles" of

dorsum of feet. [R. 267].

Teague noted that Plaintiff demonstrated a light physical demand level from floor to waist

secondary to lifting 20 pounds.  Teague then commented that Plaintiff demonstrated a sedentary

physical demand level from waist to crown level secondary to lifting 10 pounds. [R. 266].  Teague

concluded that Plaintiff was limited with squatting and demonstrated overall light values for material

handling. [R. 266].

Eston Norwood, III, M.D. performed a consultative examination on September 16, 2010. [R.

9

418]. He reviewed the FCE, primary care progress notes, Dr. Griffin's orthopaedic notes, and the October 2005 MRI and x-rays. [R. 418]. Upon examination, Plaintiff's knees "show[ed] good range of motion bilaterally with more discomfort reported on passive flexion of the left knee than the right." [R. 418]. Dr. Norwood noted "a little bit of edema at the knees and the ankles bilaterally." [R. 418]. Plaintiff's gait was antalgic "consistent with knee pain bilaterally, worse on the left." [R. 418]. Plaintiff's strength was normal in the arms and legs. [R. 418]. Dr. Norwood found no muscle spasm, and he indicated that Plaintiff was able to rise from a sitting position without assistance. [R. 418]. Dr. Norwood observed no muscle atrophy. He noted that Plaintiff's strength remained good after repetitive exercise. [R. 418]. Dr. Norwood diagnosed Plaintiff with bilateral knee pain without neurologic deficit. [R. 418]. He opined that her pain would likely make bending, lifting, stooping, kneeling, standing, and walking uncomfortable but that she had no neurologic deficit and there was no physical neurological impairment to do work-related activities. [R. 418].

Based upon his examination, Dr. Norwood completed a Medical Source Statement of Plaintiff's ability to do physical work-related activities. [R. 419]. According to Dr. Norwood, Plaintiff could frequently lift and/or carry up to 50 pounds and could occasionally lift up to 100 pounds. [R. 419]. Dr. Norwood further opined that Plaintiff could sit for 2 hours at a time without interruption and that she could stand and walk for 20 minutes without interruption. [R. 420]. Dr. Norwood also indicated that Plaintiff could sit for six hours in an 8-hour work day and that she could stand and walk for one hour each during an 8-hour work day. [R. 420]. Dr. Norwood also opined that Plaintiff could continuously reach (including overhead), handle, finger, feel, push, and pull. [R. 421]. He noted that Plaintiff could occasionally operate foot controls, climb ramps, stairs, ladders, or scaffolds, kneel, crouch, and crawl. [R. 422]. Dr. Norwood further stated that Plaintiff could

10

frequently balance and stoop. [R. 422]. Dr. Norwood also indicated that Plaintiff could continuously be exposed to various environmental conditions. [R. 423].

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work,

11

then the claimant is deemed not disabled.  (*Id.*).  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 26, 2007, the alleged onset date. [R. 29].  The ALJ concluded that Plaintiff has the following severe impairments: asthma, obesity, and degenerative changes of the knee with joint effusion. [R. 29].  The ALJ also found that Plaintiff has the following nonsevere impairment: anxiety/depression. [R. 30].  Nonetheless, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 31].  After careful consideration of the entire record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with a sit/stand option (sit 6 hours in an 8-hour work day and 30 minutes at a time; and stand/walk 4 hours in an 8-hour work day and 10 minutes at a time).  Additionally, the ALJ determined that Plaintiff can occasionally climb ramps and stairs but that she should avoid exposure to fumes, odors, dust, gases, poor ventilation, and extreme heat/cold. [R. 31].  Based upon this RFC, the ALJ concluded that Plaintiff could not perform her past relevant work.  The ALJ noted that Plaintiff was 47 years old on the alleged onset date, which is defined as a younger individual under the regulations. [R. 34].  However, the ALJ stated that Plaintiff subsequently changed age

12

category to closely approaching advanced age. [R. 34]. The ALJ found that transferability of job skills was immaterial to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled" independent of transferrable job skills. [R. 35]. Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, including: inspector; assembler of small products; and cashier. [R. 35]. Accordingly, the ALJ found that Plaintiff is not disabled, as that term is defined in the Act. [R. 36].

### III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed, or in the alternative, remanded for further proceedings. [Pl.'s Mem. 13]. Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied because: (1) the ALJ erred in rejecting the independent FCE ordered by Dr. Scruggs; (2) the ALJ's RFC findings are more compatible with sedentary work; (3) the ALJ failed to properly consider obesity into his RFC determination; and (4) the ALJ erred in failing to consider a favorable finding under the Medical Vocational Rules.  [Pl.'s Mem. 5-12].

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   Title 42 U.S.C. §§ 405(g) and 1383(c)(3) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

V.    **Discussion**

For the reasons that follow, the court finds that the ALJ's decision is based upon substantial evidence and that proper legal standards were applied.

A.    **The ALJ Did Not Err in Rejecting the FCE**

Plaintiff's first argument is that the ALJ improperly rejected the FCE performed by a physical therapist at the request of one of Plaintiff's treating physicians, Dr. Scruggs. [Pl.'s Mem. 5].  The court disagrees and concludes that the ALJ properly rejected the findings contained in the FCE.

The Commissioner's regulations determine who are acceptable medical sources for the purposes of establishing whether a claimant has a medically determinable impairment.  However, once medical evidence from acceptable medical sources establishes the presence of a severe

14

impairment, testimony from other medical sources may be used.  Specifically, Section 404.913(d)

provides as follows:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.... Other sources include, but are not limited to—
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 CFR § 404.913(e).  The weight afforded a medical source's opinion on the issue(s) of the nature

and severity of a claimant's impairments depends upon the medical source's examining and treating

relationship with the claimant, the evidence the medical source presents to support his opinion, how

consistent the opinion is with the record as a whole, the specialty of the medical source, and other

factors.  *See* 20 C.F.R. § 404.1527(c), 416. 927)(c) (2012); Social Security Ruling (SSR) 96-2p, 61

Fed. Reg. 34,490, 1996 WL 374188.

Here, the ALJ accorded "little weight" to the findings contained in the PCE because a

physical therapist is not an acceptable medical source.  Because the PCE was not provided by an

acceptable medical source, the ALJ was not required to give it special evaluation or deference.  *See*

20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); *Freeman v. Barnhart*, 220 F. App'x 957, 961

(11th Cir. 2007) (holding that the opinion of a physical therapist was not entitled to less weight than

that of a physician).  The ALJ also noted that he could not locate Dr. Scruggs' approval of the

recommendations. [R. 34].  Citing 20 C.F.R. § 404.1512(e), Plaintiff contends that the ALJ

improperly failed to clarify the record on this point by recontacting Dr. Scruggs before rejecting the

PCE.  This section of the regulations states, in relevant part:

> Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. § 404.1512(e).   The court finds no language here requiring the ALJ to recontact Dr. Scruggs.   Regardless, any failure by the ALJ to clarify whether Dr. Scruggs approved the findings is harmless because even if the opinion had been from an acceptable medical source, the ALJ was free to reject the evaluation if it was not supported by medically acceptable clinical and laboratory diagnostic techniques or if it was inconsistent with the record as a whole.   *See* 20 C.F.R. §§ 404.1527(c)(3)-(4); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (explaining that an ALJ may reject the opinion of a treating physician where it is not bolstered by the evidence or where the evidence supports a contrary finding).   Here, the ALJ did just that.   He further discounted the PCE because it was inconsistent with Dr. Scruggs' and Dr. Norwood's findings and appeared to be based substantially upon Plaintiff's subjective complaints.   Specifically, the ALJ noted that Dr. Scruggs' progress note indicated Plaintiff's pain was a four out of ten on the pain scale. [R. 34].   The ALJ also noted that Dr. Norwood, who is a specialist, found no physical neurological impairment to Plaintiff's ability to work.   *See King v. Barnhart*, 320 F. Supp. 2d 1227, 1231-32 (N.D. Ala. 2004 (noting that under 20 C.F.R. § 404.1527(d)(5), the opinion of a specialist is entitled to more weight than the opinion of a source who is not a specialist).   Therefore, the court finds that even had the ALJ recontacted Dr. Scruggs and even if she had affirmed the therapist's PCE findings, the ALJ nonetheless properly rejected the recommendations.   Thus, the Commissioner's decision is not due to be reversed on this ground.

**B.     The ALJ's RFC Determination is Based Upon Substantial Evidence**

Plaintiff's second argument on appeal is that the ALJ's RFC findings were "more compatible with a sedentary RFC."  [Pl.'s Mem. 8].  Plaintiff's argument fails.

The RFC is an assessment based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments.  *Lewis*, 125 F.3d at 1440 (citing C.F.R. § 404.1545(a)).  The ALJ must consider any statements by medical sources about what the claimant can still do, whether or not those statements are based on formal medical examinations.  20 C.F.R. § 404.1545(a)(3).  The ALJ must also consider descriptions and observations of the limitations resulting from the claimant's impairments, including limitations that result from symptoms, such as pain.  *Id.*   The final responsibility for assessing a claimant's RFC rests with the ALJ. *Id.* § 404.1527(d)(2).

Here, the ALJ determined Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with a sit/stand option (sit 6 hours in an 8-hour work day and 30 minutes at a time; and stand/walk 4 hours in an 8-hour work day and 10 minutes at a time).  Additionally, the ALJ determined that Plaintiff can occasionally climb ramps and stairs but that she should avoid exposure to fumes, odors, dust, gasses, poor ventilation, and extreme heat/cold. [R. 31].  Plaintiff contends this assessment is in error because the "basic exertional criteria of light" work requires more than the ALJ found Plaintiff capable of performing. [Pl.'s Mem. 8].  Plaintiff is mistaken.

The ALJ did not find that Plaintiff could perform a full range of light work.  Instead, the ALJ found Plaintiff could perform a reduced range of light work as reflected by the sit/stand option included in the RFC determination. [R. 31].  The reduced range of light work, including the sit/stand option, was presented to the VE for consideration.  In response, the VE testified that an individual

with these limitations could perform certain jobs.  Based, in part, upon this testimony, the ALJ concluded that Plaintiff was not disabled.  In reaching this conclusion, the ALJ carefully reviewed the objective medical evidence of record.  Specifically, the ALJ noted Dr. Griffin's findings from late 2007 and early 2008 that Plaintiff's lumbar spine and knee revealed normal ranges of motion with no tenderness to palpation. [R. 32].  The ALJ also commented that Dr. Griffin opined that Plaintiff's lumbar strain had clinically resolved and that he ultimately released her to return to work. [R. 32].  The ALJ then stated that Plaintiff's medical records from Central North Alabama Health revealed no "significant knee/back symptoms or findings." [R. 32].  The only other evidence related to knee or back problems were treatment notes from an emergency room visit in July 2010 for a left knee sprain. [R. 32].  The ALJ noted that x-rays showed degenerative joint disease but that Plaintiff had hurt her knee the night before while "dancing." [R. 32].  Further, the ALJ indicated that these records showed no edema and only mild to moderate tenderness.  Plaintiff was instructed to follow up in one to two weeks if she saw no improvement.  However, as the ALJ correctly noted, the record contains no evidence indicating that Plaintiff returned for treatment. [R. 32].  According to the ALJ, this suggested that her knee sprain resolved. [R. 32].  Based upon these findings and the consultative examinations, the ALJ afforded Plaintiff "the benefit of the doubt" and reduced her RFC to a reduced range of light work that included a sit/stand option. [R. 34].  The court finds that this substantial evidence supports the ALJ's RFC determination.  Accordingly, the Commissioner's decision is not due to be reversed on this ground.

### C.    The ALJ Properly Considered Plaintiff's Obesity in Making His RFC Determination

Plaintiff's third argument on appeal is that the ALJ did not adequately consider Plaintiff's

18

obesity when making his RFC determination. [Pl.'s Mem. 10].

The ALJ found that Plaintiff suffered from the severe impairment of obesity. [R. 33]. However, in determining Plaintiff's RFC, the ALJ stated that the record was devoid of any treating physician reporting that Plaintiff's weight significantly limits her or has caused musculoskeletal problems. [R. 33].  Citing Social Security Ruling 02-01p, the ALJ further noted that although Plaintiff had this severe impairment, it had not, in combination with her other impairments, impacted her health to the point that a treating physician diagnosed her with any impairment secondary to her obesity. [R. 33].  Plaintiff contends that the ALJ's statement does not reflect the standard provided in Social Security Ruling 02-01p.  This ruling explains that obesity may cause limitations in exertional and postural functions.  It further provides guidance for how to evaluate obesity at each stage of the sequential process, including when assessing the RFC.[3]  However, while the ALJ has

---

[3]  Specifically, SSR 02-1p provides in relevant part:

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

the responsibility to make a determination on Plaintiff's RFC, it is Plaintiff who bears the burden of proving her RFC, i.e., Plaintiff must establish that her obesity results in functional limitations and that she was "disabled" under the Social Security Act.  *See* 20 C.F.R. § 404.1512(a),(c) (2011) (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *Flynn v. Heckler,* 768 F.2d 1273, 1274 (11th Cir.1985) (citing C.F.R.§ 404.1512(a),(c) (2011)).

Notably, Plaintiff did not allege that her obesity prevented her from working—either in her disability applications or during her hearing before the ALJ.  Additionally, the ALJ correctly noted that no treating (or other source) determined that Plaintiff's obesity caused limitations on her ability to perform job related functions beyond that accounted for in the RFC. [R. 33].  The court concludes that the ALJ satisfied his obligation under SSR 02-01p to consider Plaintiff's obesity in making his RFC determination.  *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (concluding that an ALJ properly considered the effects of a claimant's obesity by finding that it constituted a severe impairment and referred to SSR 02-1p in his ruling that ultimately concluded the obesity did not result in any specific functional limitations); *James v. Barnhart,* 177 F. App'x 875, 877 n. 2 (11th Cir. 2006) (per curiam) (finding that the ALJ did not err in failing to find obesity to be a severe impairment where, during her own testimony at the administrative hearing, the plaintiff did not complain that obesity was a functional impairment); *Gary v. Astrue,* 2009 WL

---

. . . .

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p.

3063318, at *2–3 (M.D. Ala. Sept. 22, 2009) (failure to mention obesity or explain conclusion as to whether obesity caused any physical or mental limitations did not provide basis for relief where the claimant identified no evidence in the record to support her position that the condition caused "significant limitations on her ability to work").  Therefore, the Commissioner's decision is not due to be reversed on this ground.

### D.    Medical Vocational Rules

Plaintiff's fourth and final argument is that the ALJ failed "to consider a favorable finding under the medical vocational rules." [Pl.'s Mem. 12].   The court disagrees.

In support of this argument, Plaintiff maintains that even if (as Dr. Griffin's treatment notes reflect) Plaintiff made an initial recovery from her lumbar strain and the popliteal cyst on her left knee in February 2008 and even if the PCE arguably allowed for a full range of sedentary work, Plaintiff would "grid" under medical vocational rule 201.14 from her 50th birthday. [Pl.'s Mem. 12]. However, this contention relies upon the assumption that Plaintiff is restricted to sedentary work. As already discussed in detail above, the court has concluded that substantial evidence supports the ALJ's RFC determination that Plaintiff could perform a limited range of light work.  *See supra* Part IV.A-C.  Therefore, Plaintiff's argument that the ALJ failed to make a favorable finding under the medical vocational rules falls flat.  There was no need for such a consideration because, contrary to Plaintiff's assertion that she is only capable of performing sedentary work, the ALJ properly concluded that she could perform light work with a sit/stand option.  Thus, the Commissioner's decision is not due to be reversed on this ground.

## VI.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff

21

is not disabled is supported by substantial evidence and that proper legal standards were applied.

Therefore, the Commissioner's decision is due to be affirmed.  A separate order in accordance with

this memorandum opinion will be entered.

Done this 25th day of November 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[160704]

22